THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| L.J., a minor, individually and by his Parents, V.J. & Z.J., | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 06-5350 (JBS) |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
| AUDUBON BOARD OF EDUCATION, | : | |
| Defendant. | : | |

APPEARANCES:

Jamie Epstein, Esq.
1101 Route 70 West
Cherry Hill, NJ 08002
     Attorney for Plaintiffs

James Schwerin, Esq.
Paul C. Kalac, Esq.
PARKER MCCAY, P.A.
1009 Lenox Drive
Suite 102A
Lawrenceville, NJ 08648
     Attorneys for Defendant Audubon Board of Education

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

     This matter is before the Court upon Plaintiffs' motion [Docket Item 45] to hold Defendant in contempt of the Court's November 5, 2007 Opinion and Order (the "November Opinion and Order") [Docket Items 41 and 42]. Plaintiffs argue that Defendant has failed to comply with a provision of the November Opinion and Order requiring Defendant to provide Plaintiff with compensatory education to make up for lost hours of educational

programming during the 2005-2006 school year.  For the following reasons, the Court finds that Defendant has not fully complied with the requirements of the November Order and is in contempt of that Order, and, as is explained in detail below, will impose coercive civil contempt sanctions in the form of a fine if Defendant's noncompliance persists.

## II.  BACKGROUND

The facts of this case are reviewed in detail in the November Opinion, and a more succinct summary is presented here. L.J. is an autistic child who was previously enrolled in the Audubon Public School system.  His parents filed a due process petition pursuant to 20 U.S.C. § 1415(f) with the New Jersey Office of Special Education on behalf of their son, alleging that L.J.'s Individualized Education Plan ("IEP") for the 2005-2006 school year failed to address L.J.'s educational needs.  The ALJ determined that Defendant Audubon Board of Education ("Audubon") had failed to provide L.J. with adequate educational programming in the form of Applied Behavior Analysis ("ABA"), and, inter alia, ordered Audubon to provide L.J. with fifteen hours per week of ABA-related services as compensatory education.[1]

---

[1]  Defendant alleges that the ALJ improperly excluded its evidence from the hearing based on a hyper-technical reading of a procedural rule.  It filed a motion for summary judgment to this Court [Docket Item 32], asking the Court to vacate the ALJ's order and to remand the matter back to the ALJ, but it did not submit the administrative record of the proceedings before the ALJ with its motion.  Accordingly, the Court dismissed

Plaintiffs filed a Complaint with this Court, alleging that Defendant had not complied with the ALJ's order.  On November 24, 2006, Plaintiffs moved for an order to show cause asking the Court (1) to issue a preliminary injunction ordering Defendant to comply with the terms of the ALJ's order, and (2) to hold Defendant in contempt of that order.  Defendant subsequently moved to dismiss the matter, arguing that this Court lacked subject matter jurisdiction [Docket Item 10], which the Court denied in its Opinion and Order of December 22, 2006 [Docket Items 15 and 16].  The Court also declined to remand the matter back to the ALJ for clarification of his order, instead calling upon Plaintiff "to develop the record in this Court so that a clear command of the ALJ Order emerges."  Plaintiff subsequently responded by filing a supplemental brief discussing the requirements of the ALJ's order [Docket Item 17].

In its November Opinion and Order, the Court granted in part and denied in part Plaintiffs' motion for a preliminary

---

Defendant's motion without prejudice to renewal and ordered Defendant to submit the administrative record if it intended to seek summary judgment [Docket Item 39].  Defendant has since submitted a transcript of the administrative hearings, but does not appear to have moved to renew its motion for summary judgment, and Plaintiffs have submitted no opposition to the summary judgment motion apart from an October 10, 2007 letter [Docket Item 38] notifying the Court that the administrative record was missing.  In Ms. Porreca's affidavit submitted in opposition to Plaintiff's contempt motion, Defendant (through Ms. Porreca) states that the summary judgment motion is "presently pending."  (Porreca Aff. ¶ 2.)

injunction and denied Plaintiffs' motion to hold Defendant in contempt.  In the portion of the November Opinion that is relevant to the instant motion, the Court found that Plaintiffs were likely to succeed on the merits of establishing that Audubon had failed to comply with the provision of the ALJ's order requiring Audubon to provide L.J. with fifteen weekly hours of ABA-related services as compensatory education:

> Plaintiff alleges that Defendant has likewise failed to comply with the second element of the ALJ Order, which required Audubon to provide L.J. with "the sessions of behavior programming he lost during the 2005-2006 school year to be provided by qualified personnel at [Audubon's] expense and this compensatory education be completed within one year" (the "Compensatory Education Order"). <u>Z.J. and V.J.</u>, 2006 NJ AGEN LEXIS 833, at *42-43. Defendant does not argue that it has complied with the Compensatory Education Order, but instead explains that it does not understand what ALJ Martone meant when referring to "lost" sessions. (Porreca Aff. ¶ 15.)  In Defendant's words, it "cannot implement what it cannot understand."  (<u>Id.</u>)
>
> .  .  .  .
>
> Audubon does not claim that it has attempted to provide these "lost" hours, arguing only that the Compensatory Education Order is too vague to be implemented. (Porreca Aff. ¶ 15.)  The Court disagrees.  Having assessed the requirements of the Order, and the ALJ's underlying findings, and in view of Audubon's acknowledged noncompliance, the Court finds that Plaintiff is likely to succeed in proving that Audubon has not complied with the second requirement of the ALJ Order.

<u>L.J. ex rel. V.J. v. Audubon Bd. of Educ.</u>, No. 06-5350, 2007 WL 3252240, at *5 (D.N.J. Nov. 5, 2007) ("<u>L.J. I</u>").  The Court ordered Defendant to "provide L.J. with compensatory education in the form of fifteen hours of ABA-related services each week in

4

accordance with ALJ Martone's order."  Id. at *12.  Plaintiffs
now move the Court to hold Defendant in contempt of this part of
its November Order.

## III. DISCUSSION

### A.    The Parties' Arguments

Plaintiffs argue that the Court should hold Defendant in
contempt of its November Opinion and Order because Defendant has
"failed to comply with Judge Martone's and this Court's Order for
compensatory education."  (Epstein Aff. ¶ 4.)  In an Affidavit
filed with Plaintiffs' motion, Veronica Jurjevic states that
"[a]s of November 30th, 2007 . . . Audubon has not provided the
compensatory education that was ordered, nor have they contacted
me in any way to discuss how these services will be provided."
(Jurjevic Aff. ¶ 2.)  In light of Audubon's noncompliance with
the compensatory education component of the November Order,
Plaintiffs urge the Court to impose the following sanctions to
encourage compliance:

> submit a written certification in affirmation of said
> compliance to this Court within five days; make payment
> of $10,000 to Clerk of the District Court within five (5)
> days hereof, for each and every day Defendant fails to
> comply with this Order; in the event proof of compliance
> of this Order is not submitted within five (5) days,
> counsel for Defendant shall appear before this Court with
> its superintendent, Don Borden, for further proceedings
> to compel Defendant's compliance, including, but not
> limited to, the incarceration of superintendent, Don
> Borden; and to pay reasonable attorney fees and costs to
> Plaintiff in this matter for this proceeding as per
> counsel's affidavit of services which shall be filed with
> this Court within 30 days of the date of this Order.

(Pl.'s Br. 2.)  Plaintiffs argue that such sanctions are needed to ensure future compliance with the Court's Order, citing <u>Int'l Union, United Mine Workers of America v. Bagwell</u>, 512 U.S. 821, 827 (1994), for the proposition that "the paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command."

Audubon appears not to deny that it has not provided compensatory educational programming following the issuance of the November Opinion and Order.  Instead, Audubon submits data through the Affidavit of Patricia Porreca, its Director of Special Services, indicating that between January 15, 2007 and June 11, 2007, Audubon did in fact provide L.J. with 15 weekly hours of compensatory educational programming.  (Porreca Aff. ¶¶ 5-9.)  The data in Ms. Porreca's affidavit shows that of the forty weeks of compensatory education that the ALJ ordered Audubon to provide,[2] its supplied L.J. with twenty-two weeks of such compensatory programming.  (<u>Id.</u> at ¶ 7.)  Plaintiffs have not contested this evidence of Audubon's partial compliance with the ALJ's order.

_____

[2]  The ALJ's order required that L.J. "be provided with the sessions of behavior programming he lost during the 2005-06 school year," <u>Z.J. and V.J. v. Audubon Board of Education</u>, No. EDS 6203-06, 2006 N.J. AGEN LEXIS 833, at *42-43 (N.J. Agen. 2006), which as Plaintiffs' evidence shows, lasted for forty weeks, from September 12, 2005 to June 20, 2006.  (Pl.'s Mot. for Prelim. Inj. Ex. 1 at "9MM".)

**B.   Analysis of Contempt**

The standard that the Court employs in determining whether or not to hold a party in contempt of its order was described in L.J. I.  There, the Court stated:

> "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003) (citation omitted).  These three elements must be proven by clear and convincing evidence, a "high evidentiary standard," and any "ambiguities must be resolved in favor of the party charged with contempt." Id.  (internal quotations omitted); see also Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994) ("where there is ground to doubt the wrongfulness of the conduct, [the alleged contemnor] should not be adjudged in contempt"). Although "[w]illfulness is not a necessary element of civil contempt," John T., 318 F.3d at 552 (citation omitted), "[c]ontemnors . . . are sometimes excused when they violate vague court orders." Robin Woods, 28 F.3d at 399.  This is because of the "longstanding salutary rule in contempt cases that ambiguities and omissions in orders redound to the benefit of the person charged with the contempt." Id. (citation omitted).

L.J. I, 2007 WL 3252240, at *10.

Based on the record in this case, it appears that all three prongs are met, since Defendant does not appear to dispute Ms. Jurjevic's testimony that it has made no effort to provide the compensatory educational services since the November Order was issued.  The November Order inarguably constituted a valid court order.  See Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995) ("The validity of the underlying order is not open to consideration.").  As to the second prong, Defendant has not

indicated that it had no knowledge of the Order.

With regard to the final prong of the analysis – whether Audubon has disobeyed the Order – Audubon has not presented any evidence of its efforts to comply with the Order since it was entered on November 5, 2007, or disputed Ms. Jurjevic's testimony as to its noncompliance in any way.  Instead, Audubon's evidence indicates that by the time this Court ordered Audubon to comply with the ALJ's order to provide fifteen weekly hours of compensatory education, Audubon had provided some, but not all, of this ordered compensatory education.  As the Court noted, supra, the ALJ's order required Audubon to provide L.J. with fifteen weekly hours of compensatory ABA-related programming to make up for its failure to provide such programming during the forty-week 2005-2006 school year.  See Z.J. and V.J., 2006 N.J. AGEN LEXIS 833, at *42-43; Pl.'s Mot. for Prelim. Inj. Ex. 1 at "9MM".  Ms. Porreca testifies, and Plaintiffs have provided no evidence to the contrary, that Audubon provided L.J. with compensatory education for twenty-two of the forty ordered weeks. (Porreca Aff. ¶ 7.)

Based on the undisputed evidence in the record, the Court finds that Defendant provided L.J. with twenty-two weeks of compensatory education, but that it has made no effort to provide the remaining eighteen weeks of ABA-related programming ordered both by the ALJ and by this Court.  In light of those remaining

8

eighteen weeks of compensatory education, the Court finds with regard to the final prong of the contempt analysis that Defendant has disobeyed the Court's November 2007 Order.  Defendant discontinued its provision of compensatory educational programming on June 11, 2007, (Porreca Aff. ¶ 7), and in the three months since this Court entered its November 2007 Order, Defendant has made no effort to provide the remaining weeks of educational programming.  (Jurjevic Aff. ¶ 2.)  Having found by clear and convincing evidence that "a valid court order existed, [] the defendant had knowledge of the order, and [] the defendant disobeyed the order," John T., 318 F.3d at 552 (citation omitted), the Court finds that Audubon is in contempt of the November 2007 Order.

### C.   Appropriate Remedy

This Court has found that the defendant Audubon Board of Education has violated this Court's preliminary injunction order of November 5, 2007, by failing to provide L.J. with compensatory education as ordered therein at the rate of fifteen weekly hours of ABA-related services.  The remaining issue is to determine the proper remedy that is sufficient but not greater than necessary to compel Defendant to resume providing those services at this time.

The Defendant evidently believed it had complied with its compensatory ABA-related services obligation by providing fifteen

9

hours per week for twenty-two weeks, from January to June of
2007.  If Defendant had continued for eighteen additional weeks,
it would have fully met its obligation to provide fifteen hours
per week of such services for the academic year as ordered.  It
did not do so and there remains, as discussed above, a remaining
compensatory services obligation to be satisfied, as ordered in
my preliminary injunction on November 5, 2007.

The Defendant has been indifferent to its obligations in
this one respect.  The remedy to assure compliance will be to
simply require that the Defendant provide ABA-related services to
L.J. at the rate of fifteen hours each week to commence not later
than the week of March 3, 2008, such that at least fifteen hours
have been provided by March 7, 2008, in accordance with a
mutually agreeable schedule.  As both the ALJ's order and this
Court's November 2007 Order required, the ABA-related services
are to be based upon a Functional Behavioral Assessment and are
to be provided by a board-certified behavior analyst; Defendant
may, at its election, provide these services through its own
personnel or may employ the services of a qualified independent
contractor.  As the parties agreed at the February 14, 2008
hearing, Defendant shall provide L.J.'s parents with weekly data
collection sheets and daily progress reports; these materials are
to be provided within one week of the Friday ending each week,
such that the first collection of these materials must be

10

provided no later than March 14, 2007 for the week beginning
March 3, 2007.  Defendant shall continue to provide these
services at the rate of fifteen hours each week until a total of
270 hours[3] have been provided.  The parties are free to mutually
agree to vary the schedule, and agreement to a reasonable request
should not be arbitrarily withheld.  In the event Defendant has
not met this obligation by providing at least fifteen hours of
services by March 7, 2008, a coercive fine of $250 per each day
of non-compliance after March 7, 2008 shall be paid by Defendant
to the Clerk, U.S. District Court, to continue from day-to-day
until the Defendant is in compliance with this schedule.
Compliance will thereafter be measured on a weekly basis.  The
Court will require strict compliance, <u>except</u> that the failure to
provide fifteen hours of such services in a week will be excused
if due to factors beyond a party's control despite best efforts,
such as illness or other good cause necessitating the
cancellation of a session, and provided further that any missed
session shall be promptly rescheduled.  Since this order
anticipates the cooperation of all parties and their attorneys,
no monetary sanction will be imposed upon Defendant with respect
to any incident in which the Plaintiffs or their attorney
withheld reasonable cooperation and open, honest communication

---

[3]  The total of compensatory ABA-related services remaining
is 270 hours, which is the product of 18 weeks x 15 hours per
week.

with Defendant and their attorney regarding the scheduling and providing of these services.[4]

By selecting the sum of $250 for each day of material non-compliance, this Court means to impose a coercive sanction sufficient to induce compliance, once and for all, with this remaining IDEA obligation.  If there is full compliance or if non-compliance is excusable within the exception described above, there will be no fine.

The award of attorney's fees is deferred abiding the outcome of the case in chief.  Attorney's fees in connection with this contempt motion are denied without prejudice to renewal in the event Plaintiffs are the prevailing parties at the conclusion of

---

[4] The Court will deny Plaintiffs' request, made at the February 15, 2008 hearing, to appoint a special master to oversee the implementation of this Order.  The appointment of a special master pursuant to Federal Rule of Civil Procedure 53 is to be the "exception [rather] than the rule," and is appropriate only in a case with "exceptional qualities" that distinguishes it from "other cases that have presented complex legal and factual claims, but in which no special masters were sought or appointed."  Prudential Ins. Co. of America v. U.S. Gypsum Co., 991 F.2d 1080, 1086, 1088 (3d Cir. 1993); see also La Buy v. Howes Leather Company, 352 U.S. 249 (1957).  This is not such a case.  There is nothing uniquely complicated about the facts of this case or the Court's Order, and parties regularly implement court orders in IDEA cases without such oversight.

the case.

   The accompanying Contempt Order is entered.


**February 19, 2008**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge